IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

RONNIE DEXTER,

      Plaintiff,

v.                                                    CASE NO. 1:14-cv-193-MP-GRJ

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying his application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. (Doc. 1).   The Commissioner has answered (Doc. 9), and both parties have filed briefs outlining their respective positions. (Docs. 14, 15).  For the reasons discussed below, the Commissioner's decision is due to be affirmed.

## I.  PROCEDURAL HISTORY

Plaintiff filed his application for supplemental income benefits on December 17, 2010, alleging a disability onset date of November 20, 2010.   (R. 204.)  Plaintiff's application was denied initially and upon reconsideration.  (R. 1-4, 11-14.)  An administrative law judge (ALJ) conducted a hearing on May 10, 2013 and entered a decision on May 22, 2013 finding Plaintiff not disabled. (R. 11-14, 21-27.)  The Appeals Council denied Plaintiff's request for review on August 14, 2014.  (R. 1-4.)  Plaintiff filed the Complaint in this case on January 16, 2014.  (Doc. 1.)

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by

---

[1] *See* 42 U.S.C. § 405(g) (2000).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6]  The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8]  First, if a claimant is working at a substantial gainful activity, he is not disabled.[9]  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10]  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[11]  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[12]  Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from

---

[6] 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14]  The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15]  The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[17]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide

---

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). *See* Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19]  Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[20]  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

### III.  SUMMARY OF THE RECORD

Because Plaintiff's challenge on appeal pertains only to whether he meets Listing 12.05C in light of his performance of substantial gainful activity, the summary of the medical evidence will focus on his mental impairments.

### A.    Medical Evidence

On March 11, 2011, Dr. Eftim Adhami performed a medical evaluation on Plaintiff.  Dr. Adhami opined that Plaintiff's mental status was normal in mood, judgment and expression and that he understood questions and answered appropriately.  Plaintiff reported panic attacks and mild depression.  He completed the tenth grade through enrollment in special classes.  Dr. Adhami assessed Plaintiff with panic disorder, mild depression and a history of special education with slow learning.  (R. 313-14.)

---

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] See id.

Dr. Janet Humphreys conducted a psychological evaluation of Plaintiff on April 26, 2011.  Plaintiff reported depressed mood, irritability, anxiety with difficulty falling asleep and staying asleep, and poor concentration.  He stated that he has panic attacks when he argues with his girlfriend and denied treatment with any psychotropic medication.  Plaintiff stated that he was Baker Acted at age thirty-five after threatening suicide.  He reported that he was able to care of his own personal needs and that he typically spends his days looking for work, working puzzles, reading, and watching television.  He stated that he attends church twice a month and visits his mother and sister once or twice a month.

Dr. Humphreys observed a depressed mood with congruent affect, and noted that Plaintiff denied suicidal/homicidal ideation, intent, and plan.  She found Plaintiff's thought processes to be logical and goal oriented, and opined that Plaintiff had no peculiarity or bizarreness of thought.  Dr. Humphreys noted that Plaintiff denied hallucinations and had good judgment and insight.  She found that he was well oriented to person, place, and time, and had intact recent and remote memory.  She stated, however, that he could not name the current president or the capital of Florida, and that he indicated that he could not perform serial sevens subtractions or simple multiplication.  Dr. Humphreys diagnosed Plaintiff with adjustment disorder with mixed anxiety and depressed mood.  She suggested that Plaintiff's concentration and immediate memory appeared impaired, which might affect Plaintiff's ability to carry out complex opinions, but that his recent and remote memory were grossly intact, which indicated a capability of performing simple, repetitive tasks.  (R. 319-22.)

Dr. Theodore Weber, a state agency consulted, completed a Psychiatric Review Technique and mental RFC on April 29, 2011.  Dr. Weber found that Plaintiff had only mild limitation of activities of daily living and moderate limitation of social functioning and concentration, persistence, or pace.  He assessed Plaintiff with moderate limitations on understanding and remembering detailed instructions but no other significant limitations on understanding and memory.  He opined that Plaintiff would have moderate limitations on carrying out detailed instructions and the ability to maintain attention and concentration for extended periods, as well as the ability to complete a normal workday without interruptions from psychologically based symptoms. Dr. Weber noted that Plaintiff would also have moderate limitations in his ability to get along with coworkers or peers without distracting them and in his ability to respond appropriately to criticism from supervisors, but no other significant limitations on his ability to interact socially.  (R. 324-42.)

A physical exam performed upon admittance to the emergency room on November 26, 2011, after a fall while roller-skating with his children, evidenced that Plaintiff was alert and oriented to person place and time, with a normal mood and affect.  (R. 345-54.)

**B.     Hearing Testimony**

At the hearing, the ALJ asked whether Plaintiff had not engaged in substantial gainful activity for a period of twelve months.   Counsel for Plaintiff conceded that Plaintiff had not refrained from engaging in substantial gainful activity for twelve months since the alleged date of disability, but contended that Plaintiff qualified as disabled

under Listing 12.05C.  Plaintiff testified that he began working in 2010.  (R. 21-27.)

**C.      Findings of the ALJ**

The ALJ found that Plaintiff was hired by Piccadilly Restaurants LLC on July 7, 2011, earning $2,269.00 in the 3rd quarter of 2011, $3,072.00 in the 4th quarter of 2011, $3,069.00 in the 1st quarter of 2012, $3,646.00 in the 2nd quarter of 2012, and $1,011.00 in the 4th quarter of 2012.  The ALJ further found that Plaintiff was hired by Winghouse of Gainesville on October 26, 2012, earning $390.08 in the 4th quarter of 2012, and that he was hired by Peach Valley Gainesville on October 31, 2012, earning $1,986.00 in the 4th quarter of 2012.  The ALJ concluded that per the regulations, Plaintiff had engaged in substantial gainful activity since July 7, 2011, and that there was no continuous twelve month period when he had not engaged in substantial gainful activity; accordingly, the ALJ concludes that Plaintiff was not disabled under the Social Security Act.  (R. 11-14.)

## IV.  DISCUSSION

On appeal, Plaintiff does not contest the ALJ's determination that he engaged in substantial gainful activity after his alleged disability onset date.  Rather, Plaintiff argues that despite the ALJ's finding at Step One that Plaintiff was not disabled because he engaged in substantial gainful activity, Plaintiff is still entitled to a finding that he is disabled because he meets the requirements of Listing 12.05C.

It is axiomatic that an ALJ, in reviewing a claim for disability, must follow the sequential disability evaluation method required by the Secretary's regulations.  *Powell ex rel. Powell v. Heckler*, 773 F.2d 1572, 1575 (11th Cir. 1985).  Failure to do so

constitutes grounds for reversal.  *Adams v. Heckler*, 742 F.2d 1321, 1322 (11th Cir.

1984).  The Secretary's regulations are set forth at 20 C.F.R. § 404.1520 and are

reiterated in the standard of review at the beginning of this Report and

Recommendation.  Section (a)(4) of the regulations provides as follows:

> "The five-step sequential evaluation process.  The sequential evaluation is a
> series of five "steps" that we follow in a set order . . . [i]f we can find that you are
> disabled or not disabled at a step, we make our determination or decision and
> *we do not go on to the next step*.  If we cannot find that you are disabled at a
> step, we go on to the next step . . . ."

20 C.F.R. § 404.1520(a)(4)(emphasis added).  Thus, if the ALJ finds the

claimant not disabled at a step, the ALJ stops the evaluation at that step and does not

continue on to the next step.

Although Plaintiff argues that he is entitled to a finding that he meets Listing

12.05C, the regulations provide exactly the opposite.  Upon the ALJ's finding that

Plaintiff engaged in substantial gainful activity at Step One, the ALJ is not permitted to

proceed to Step Three to determine whether or not Plaintiff meets a listing.  *See*

*Pritchard v. Barnhart*, 140 F. App'x 815, 819 (11th Cir. 2005)(rejecting Plaintiff's

argument that the ALJ erred by not considering the "full extent of Plaintiff's medical

condition" after finding him not disabled at Step One as directly inconsistent with the

Secretary's regulations).  Thus, the ALJ did not err by declining to address whether

Plaintiff met Listing 12.05C after finding that Plaintiff was not disabled at Step One

because Plaintiff engaged in substantial gainful activity.

Moreover, although Plaintiff has not explicitly challenged the ALJ's finding that

Plaintiff engaged in substantial gainful activity (and appears to concede the issue in his

memorandum) any challenge would be without merit because the ALJ's finding is supported by substantial evidence.  The primary consideration in determining whether a claimant has engaged in substantial gainful activity is the amount of earnings derived from that work.  20 C.F.R. § 416.974(a)(1).  The regulations provide that earnings of $1,000.00 per month (or $3,000.00 per quarter) constitute substantial gainful activity for 2011 and earnings of $1,010.00 per month (or $3,030.00 per quarter) constitute substantial gainful activity for 2012.  *See* 20 C.F.R. § 404.1574; Substantial Gainful Activity, Social Security Administration, http://www.socialsecurity.gov/oact/cola/sga.html (last visited September 8, 2015).

As discussed above, the ALJ found that Plaintiff was hired by Piccadilly Restaurants LLC on July 7, 2011, earning $2,269.00 in the 3rd quarter of 2011, $3,072.00 in the 4th quarter of 2011, $3,069.00 in the 1st quarter of 2012, $3,646.00 in the 2nd quarter of 2012, and $1,011.00 in the 4th quarter of 2012.  The ALJ further found that Plaintiff was hired by Winghouse of Gainesville on October 26, 2012, earning $390.08 in the 4th quarter of 2012, and he was hired by Peach Valley Gainesville on October 31, 2012, earning $1,986.00 in the 4th quarter of 2012.  (R. 11-14.)

Plaintiff filed his application for disability benefits in November of 2010 and begun engaging in substantial gainful activity by the 4th quarter of 2011.  Since that quarter, no twelve-month period has passed in which Plaintiff did not engage in substantial gainful activity, or, that is, earned less than the amount specified for the regulations for that quarter.  Therefore, the ALJ's determination that Plaintiff was not disabled because Plaintiff engaged in substantial gainful activity is supported by

substantial evidence. Accordingly, for these reasons, the Court concludes that the ALJ did not err by declining to address whether Plaintiff met the requirements of Listing 12.05C because he found Plaintiff was not disabled at Step One of the sequential evaluation.

Furthermore, even assuming *arguendo* that Plaintiff did not engage in SGA, Plaintiff's argument still fails because Plaintiff has not demonstrated that he meets Listing 12.05C.  The claimant bears the burden of demonstrating that he meets a Listing.  *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991).  To meet a Listing, a claimant must meet all of the specified medical criteria, and an impairment that fails to do so does not qualify no matter how severely it meets some of the criteria.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Listing 12.05C addresses mental retardation.[21]  To meet this Listing, a claimant must have (1) significantly subaverage general intellectual functioning; (2) deficits in adaptive functioning; and (3) manifested deficits in adaptive behavior before age 22. *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  The claimant must also meet one of the four sets of criteria in paragraphs A, B, C, or D.  20 C.F.R. part 404, subpt. P app. 1, 12.00 (A).  Listing 12.05C requires a showing of (1) "a valid verbal, performance, or full scale IQ of 60 through 70" and (2) "a physical or other mental impairment imposing an additional and significant work-related limitation of function."

---

[21] In 2013, the regulations changed the designation of Listing 12.05 from mental retardation to intellectual disability.  However, because the evaluations of Plaintiff were issued prior to the change in the regulations, the operative description of the Listing was mental retardation.  This opinion will refer to the impairment as mental retardation to maintain consistency.

*Id.* at 12.05C.

Even assuming, to Plaintiff's benefit, that his IQ scores[22] qualify as a showing of "a valid verbal, performance, or full scale IQ of 60 through 70," Plaintiff has still failed to demonstrate that he meets Listing 12.05C.  First, the medical record is devoid of any diagnosis, or notably, any mention of "significantly subaverage general intellectual functioning."  Dr. Adhami diagnosed history of special education with slow learning and Dr. Weber diagnosed a history of learning disorder, neither of which constitute mental retardation.  Dr. Humphreys declined to diagnose mental retardation on Axis II.  None Plaintiff's evaluations diagnose mental retardation or suggest that Plaintiff has any measure of "subaverage general intellectual functioning."

Additionally, Plaintiff has failed to show the requisite deficits in adaptive functioning to meet a Listing under section 12.05.  Although the regulations do not explicitly define "adaptive functioning," the regulations describe "adaptive activities" as "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for [] grooming and hygiene, using telephones and directories, and using a post office."  20 C.F.R. part 404, subpt. P app. 1, 12.00C(1) The record evidences that Plaintiff participates in these types of activities, as he is able to care for his personal needs, look for work, complete puzzles, read, watch television,

---

[22] Plaintiff claims that school records from the Alachua County School Board show a WISC-R IQ exam administered in 1977, in which Plaintiff obtained a Verbal IQ score of 67, a Performance IQ score of 69, and a Full Scale IQ score of 66.  Plaintiff took a second WISC-R IQ exam in 1979 and obtained a Verbal IQ score of 70, a Performance IQ score of 80, and a Full Scale IQ score of 73.  Plaintiff claims that he took one other WISC-R IQ exam in 1974 on which he scored a Verbal IQ score of 76, a Performance IQ score of 74, and a Full Scale IQ score of 83, but contends that these results should be discounted because they are outliers and the exam was administered verbally when Plaintiff was six years old.

attend church, and visit family members.  He has also engaged in substantial gainful

activity since 2011 and has held jobs at various restaurants.  On this record, Plaintiff

has not shown that he has the deficits in adaptive functioning required to meet Listing

12.05C.

Accordingly, for these reasons, the Court concludes that the ALJ did not err by

declining to address whether Plaintiff met the requirements of Listing 12.05C because

he found Plaintiff was not disabled at Step One of the sequential evaluation.

Furthermore, Plaintiff has not met his burden in demonstrating that he satisfied Listing

12.05C.

## V.  RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that the decision of

the Commissioner should be **AFFIRMED**.

**DONE AND ORDERED** this 10th day of September 2015.

*s / Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen
(14) days after being served a copy thereof.  Any different deadline that may appear on the
electronic docket is for the court's internal use only, and does not control.  A copy of objections
shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or
recommendations as to any particular claim or issue contained in a report and recommendation,
that party waives the right to challenge on appeal the district court's order based on the
unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.